**STATE of Tennessee, Appellee,**

v.

**Donald Cedric WITHERSPOON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 25, 1983.

Permission to Appeal Denied by Supreme Court April 4, 1983.

David M. Himmelreich, Asst. Atty. Gen., Scott Williams, Asst. Dist. Atty. Gen., Nashville, for appellee.

Fred C. Dance, Nashville, for appellant.

OPINION

DAUGHTREY, Judge.

The central question in this appeal is whether the evidence shows that defendant Donald Cedric Witherspoon is guilty of robbery or merely of grand larceny. The jury found him guilty of robbery and set his sentence at five to seven years imprisonment. On appeal, the defendant contends that the record fails to establish a causal connection between his conduct and the fear experienced by the victim at the time

of the offense. Because we conclude that the question was properly left to the jury's determination, we decline to reverse on this basis.

The proof at trial showed that on May 29, 1981, Linda Hollins was head cashier at a Nashville supermarket. As part of her regular duties, she drove to a nearby branch bank to get $1550 in change for the store's cash registers.

Hollins carried the money out to her car in a money bag and put it on the floor behind the driver's seat. She sat down in the driver's seat, but before she could pull her left leg into the car, she suddenly saw the defendant standing between her and the open car door, so that she was unable to close the door. The defendant stood there for a few moments without speaking and then asked directions to the interstate. As he was asking directions, he moved closer to Hollins, grabbed the bag, and ran. He was apprehended in the vicinity a few minutes later, and all the money was recovered.

Hollins testified that she was very frightened during the incident and that her fear was caused by the fact that a strange man was standing so close to her. The defendant argues, however, that by her own testimony the victim established a lack of causal connection between her fear and his actions:

Q: [by prosecuting attorney] [A]fter you noticed Mr. Witherspoon standing there . . . what happened?

A: Well, I turned around and he was standing there and I thought, you know, at first he didn't say anything and I thought, of, my gosh, you know, and I was naturally scared to death.

Q: What went through your mind at that point?

A: Well, at that point I forgot I had the money and the only thing that I could think that he wanted was rape.

    *     *     *     *     *     *

Q: (by defense counsel) [J]ust turning around and seeing this person standing there, that made you scared?

A: Yes, turning around and seeing a person standing inside my car door that I had never seen before, naturally I was scared.

Q: If you had not been afraid of this person standing there, could he still have accomplished the taking of this money?

A: Yes, like I said, I didn't know what was on his mind.

The defendant contends that the taking was not accomplished by placing the victim in fear, but by the deception of asking for directions and then grabbing the money before the victim could respond. Any fear on her part, he argues, was merely a natural reaction to the unexpected presence of a strange man close to her and thus does not fall within the purview of T.C.A. § 39–3901. We disagree with this interpretation of the testimony in the record.

T.C.A. § 39–3901(a) defines robbery as "the felonious and forceable taking from the person of another, goods or money of any value, by violence or putting the person in fear." The statutory definition raises two questions pertinent to the facts of this case: first, whether the victim was "in fear" for purposes of § 39–3901(a); and, second, whether the facts show a sufficient causal relationship between her fear and the theft.

Under Tennessee law, the standard for determining whether the victim was put "in fear" is largely subjective. In *Sloan v. State*, 491 S.W.2d 858, 861 (Tenn.Cr.App. 1972), the court held that "the controlling consideration is the state of the victim's mind at the time of submission or compliance with the robber's demands." In the present case, the victim testified that she was fearful from the moment she saw the defendant standing close beside her, positioned in such a way as to prevent her from closing the door to her car. Nor does her fear, whether of rape, robbery, or any other immediate harm, seem unreasonable under the circumstances. As the *Sloan* court concluded, "[a]fter employing methods intended and calculated to install submissive fear in his victim, a robber cannot be heard to

say that they did not produce that effect or that the victim's fear was ill-founded and unreasonable." *Id.* at 862.

The court in *Sloan* further dealt with the necessary relationship between the victim's fear and the taking, noting that the fear engendered by the assailant must be such as would "induce a man to part with his property for the sake of his person." *Id.* at 861. Such a rule is followed in a majority of jurisdictions. *See generally* W. LaFave and A. Scott, *Criminal* Law 699 (1972). *See, e.g., Commonwealth v. Jones,* 362 Mass. 83, 283 N.E.2d 840, 843 (Mass.1972); *Crocker v. State,* 272 So.2d 664, 665 (Miss.1973); *State v. Sanchez,* 78 N.M. 284, 430 P.2d 781, 782 (N.M.Ct.App.1967).

To support his argument that the victim's fear did not enable the defendant to take her money, the defendant points to the victim's testimony. He characterizes it as an admission that the taking would have occurred even if the victim had not been afraid and analogizes this situation to "purse snatching" cases in which the offender is liable only for larceny and not robbery.

■ However, we think the proof in this case shows more than a mere "snatching." *Compare and contrast People v. Patton,* 76 Ill.2d 45, 27 Ill.Dec. 766, 389 N.E.2d 1174 (Ill.1979) (where defendant swiftly approached victim and grabbed purse from victim's fingertips, offense held not to constitute robbery). The defendant here did not simply grab the moneybag from an unattentive victim. Instead, he placed himself so close to the victim and blocked her movement in such a way as to make her immediately apprehensive for her own safety. Moreover, the victim testified that she was so gripped by fear that she momentarily forgot about the money she had in her possession. While the facts present an admittedly close case on this question, it appears that the victim may have let down her guard from fear engendered by the defendant, thus permitting him to grab the money without resistance and escape. Hence the record tends to indicate not only that the defendant's intention was to "intimidate and frighten the victim into docile nonresistance and meek compliance," *Sloan v. State, supra,* 491 S.W.2d at 861, but also that he succeeded in his purpose, whether or not the victim realized it and whether or not she was able to articulate it at trial. At the very least, the facts were sufficient to make out a question for the jury, after proper instructions on both robbery and larceny. Under the standard of Tennessee Rule of Appellate Procedure 13(e), we cannot say that the evidence fails to support their verdict.

We further note that in at least one similar case from another jurisdiction, the courts have reached the same conclusion as we do here. In *Flagler v. State,* 189 So.2d 212 (Fla.Dist.Ct.App.1966), *aff'd* 198 So.2d 313 (Fla.1967), the defendant opened the passenger door of an automobile stopped at a stop sign. He sat in the front seat for several minutes without speaking and then grabbed the victim's handbag and fled. The resulting robbery conviction was upheld by the appellate courts, albeit without extended discussion of the causal link between the victim's fear and the theft.

■ Finally, we find no merit to the defendant's contention that the trial court erred in refusing to charge the jury on petit as well as grand larceny. The defendant insists that this omission deprived him of the potential benefit of workhouse sentencing for petit larceny, as provided by T.C.A. § 39–4205. He cites as support *Lax v. State,* 214 Tenn. 162, 378 S.W.2d 782 (1964) (undisputed value of goods $800, defendant convicted of petit larceny and sentenced to workhouse term); and *Troglen v. State,* 216 Tenn. 447, 392 S.W.2d 925 (1965) (undisputed amount of check $700, defendant convicted of petit larceny and sentenced to workhouse term). But although *Lax* and *Troglen* (and T.C.A. § 40–2518) would permit a trial court to charge on petit larceny in a grand larceny case without committing

reversible error, our Supreme Court has likewise held that the failure to charge on all possible lesser included offenses is not error where there is no evidence in the record to support such offenses. *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn.1975). Although the distinction between robbery and larceny under the proof in this case is a fine one, no reasonable reading of the record would permit a factfinder to conclude that the defendant took less than $200 from the victim. It follows that the trial court did not err in refusing to charge on petit larceny.

For the foregoing reasons, the judgment of conviction is affirmed.

O'BRIEN and TATUM, JJ., concur.